### YARNALL BAILEY *vs.* WILLIAM B. WIGGINS.

A magistrate acting within his jurisdiction, is not legally responsible for error of judgment.

He cannot be made a trespasser for the arrest or imprisonment of a party charged with an offence, though he be innocent.

Quere? Can he avail himself of this defence in an action of trespass and false imprisonment, under the general issue?

Where the plaintiff's proof shows that the only trespass complained of was the judicial act of issuing process on complaint and holding to bail, he may.

A warrant duly issued on complaint against a party whose name is unknown, and with a blank for the name, is not illegal, and will justify the arrest of the proper person.

THIS was an action of trespass and false imprisonment, tried at May term, 1853, on the *general issue.*

The defendant was a magistrate, but this was not suggested by the pleadings, which were simply in trespass vi et armis, to which he pleaded *not guilty.*

The plaintiff's case as opened, was, that he was taken and thrown into prison by authority of the defendant, acting as a justice of the peace, but on process issued without affidavit charging him with any offence; without any process authorizing his arrest, and indeed without any valid or lawful process whatever. In support of this case, the

plaintiff put in evidence a record of certain proceedings purporting to have been had before Justice Wiggins, and which referred to an affidavit not produced. He also gave evidence to show malice.

The defendant's case, as stated, was, that a horse claimed by Bailey had been attached for debt and sold as the property of one Crossan, to Charles Murphy. That Crossan and Bailey, first by artifice, and then by force, took the horse from a servant of Murphy, on the highway, and carried him out of the State, with a saddle and bridle of Murphy's; for which Crossan had since been indicted. That Murphy made affidavit before Justice Wiggins, who issued process for the arrest of Bailey, leaving a blank for his name (which was then unknown) and which was filled in *after* his arrest; and, upon hearing, held him to bail, and committed him in default of bail.

The case turned, at present, on the question whether the defendant could avail himself of the defence that he acted judicially in the matter, as the pleadings stood, and without a special plea of justification.

Charles Murphy was called, and was asked if he made a complaint before Justice Wiggins.

This was objected to—1. Because the record of the complaint was better evidence. 2. Because it was matter of justification, and should have been pleaded.

*Mr. Bates* answered, that he could prove the fact of making the complaint otherwise than by the record; and that in an action against a justice of the peace for false imprisonment, the legality of his proceeding is brought in issue by the plea of not guilty, which goes to the gist of the suit, and there is no need of pleading a justification.

*Mr. Rogers* denied this; and said that in no case of an action against a public officer, even a judge, for abuse of power, could the officer prove a matter of justification without pleading it, unless there be a statutory provision allowing it. A justice of the peace, no more than a constable, can excuse himself from any act, without pleading the excuse.

*Mr. Bates.*—I would rest the case on the principles of pleading. There is nothing to confess and avoid. The magistrate did not arrest Bailey. There is no prima facie case against him. The charge against him in the declaration is, in substance, that he *illegally* issued a warrant for the arrest of the plaintiff; the evidence answers this directly; and, wherever this is the case, it may be proved under the

general issue. It may not be so with a constable. The arrest made by him was prima facie a trespass, and must be justified. What has the justice done that is illegal in itself?

*Mr. Rogers.*—He imprisoned the plaintiff.

*The Court.*—We supposed when the case was opened, that the pleadings charged this defendant with an illegal act done by him *as a justice of the peace ;* but on inspecting the declaration, we find it a simple declaration for an assault and battery, and false imprisonment, with a count for an assault and battery merely. To such a declaration the matter now offered in evidence is designed as a *justification,* and ought to be so pleaded. The court, (a majority of them) therefore, rule out the evidence, though they have had some hesitation whether it might not be considered in mitigation of damages.

Judge HARRINGTON.—Misled as I was by the introductory remarks of the plaintiff's counsel, into a supposition that the record in this case disclosed the official character of the defendant, and complained of its illegal exercise, I concurred in admitting proof of acts which are of an official character only. Among this kind of evidence a *transcript* from this defendant's docket as a justice of the peace has been admitted ; evidence that the plaintiff was *held to bail* by the defendant as a justice of the peace ; proof that he delivered *to a constable* a paper requiring him to arrest the plaintiff ; proof to show that this warrant was issued without a previous complaint against the plaintiff ; and further proof that this defect was afterwards sought to be supplied by taking the complaint of Mr. Murphy, *after* the arrest of the party accused. Now, in answer to this evidence, the defendant offers to prove that Murphy's complaint was made in due form, *before* any process was issued for the arrest of the party, and that the defendant upon that complaint issued a warrant. That the only participation of the defendant in the plaintiff's arrest, was in the doing official acts, would seem of necessity to require the proof of those acts *by the record,* and that opens the whole proof. If the *arrest* of the plaintiff is the assault complained of, it was no otherwise made by this defendant than in the issuing a warrant, which being proved by the record, the same record will show on whose complaint it was issued; and, if this defendant *imprisoned* the plaintiff, it was only by a holding to bail, and commitment, both of which are proved by the record. I am of the opinion, then, both

as in reply to the plaintiff's evidence; and, generally, that this evidence is admissible.

The testimony was excluded; and exception prayed and granted.

This closed the case on the evidence; and it was argued at length before the jury by *Mr. Rogers*, for plaintiff, and *Mr. Bates*, for the defendant. In the argument *Mr. Bates* contended that the transcript put in evidence by the plaintiff, of Justice Wiggins' record, to show the warrant for plaintiff's arrest, was itself evidence of the justification, and must be considered as evidence for all purposes. *Mr. Rogers* denied that it could go in justification, unless a justification had been pleaded, but admitting it all, it proved no basis for the warrant of arrest; as it showed no complaint upon oath of probable cause. He read from the Constitution this invaluable protection against illegal arrest; and argued that the Constitution had been violated in the person of his client by this arrest, taking even the whole transcript in evidence.

*Mr. Rogers* also stated that he made the objection to the evidence under the pleadings in the case, without desiring to exclude evidence of justification; and that he would not have resisted a motion for amending the pleadings, by introducing this plea under the provisions of the Revised Code. He did not seek,—he never sought,—to try a case upon technical issues; and would have yielded to a motion for amendment under the wholesome provisions of the recent act for amendments. He then argued the case on the transcript generally, to show that the offence charged against Bailey was a mere trespass, and did not justify an arrest as for a criminal charge. And he claimed damages by way of warning and example for the great wrong done in this case to an unoffending stranger.

*Chief Justice* BOOTH, in charging the jury, explained the nature of the action and the issue to be tried. Every unlawful restraint of a man's liberty is an imprisonment; and a false imprisonment includes an assault. The question was, whether the defendant in this case was guilty of the assault and battery and imprisonment of the plaintiff. The plea was not guilty, and under it, the defendant could not justify his acts; the only question to be tried being whether he was guilty or not guilty of doing the act; and not whether he was justified in doing it. He who commands or counsels another to do an act of trespass and imprisonment, becomes a party in the doing it. In regard to the transcript offered in evidence by the plaintiff and admitted, the court would not restrict the jury in its use; but

would say to them, that if any part of it was relied upon as evidence, the whole might be considered by them, according to their estimate of its value; they being the judges of all the facts, as well as the credit of witnesses.

The plaintiff had a verdict for $176 75.

And a rule was laid to show cause why a new trial should not be granted, for the exclusion of proper evidence, and because the verdict was against evidence.

*Mr. Bates*, in support of the rule.—1. *As to the rejection of admissible evidence :*—The declaration is in the general form of trespass and false imprisonment. It does not show what was the particular form of trespass. That was left to be disclosed at the trial; the plea was not guilty. At the trial, the case attempted to be proved was that defendant, acting as a justice, and as such having a general justification to issue process of arrest, had issued a warrant for the arrest of plaintiff, without a complaint under oath giving jurisdiction in the particular case. The evidence offered by the defendant and rejected by the court, was that the warrant was founded upon a complaint under oath. Was it admissible? I maintain that it was on three grounds :

1. In bar of the action, under the plea of not guilty; being matter strictly in denial of the plaintiff's case. It is agreed that the general issue restricts the defendant's proof to matters which are in denial of the plaintiff's case; but what maters are in denial of the plaintiff's case, and therefore within the general issue and the range of proof admitted by it, is always a question depending upon the particular case which the plaintiff seeks to establish. Under the same form of action cases vary in their essential facts, and the general issue as applied to one or another of them, will involve totally distinct questions. Thus, if the trespass proved was a distinct assault by defendant, it is made out by simple proof of such assault; and the general issue applied to such a case raises no other question. If the trespass were an assault by command of defendant, proof of such command as well as the assault, becomes essential to the plaintiff's case and may, therefore, be disproved by the defendant under the general issue. If the trespass relied on is an excess of authority by a constable, in the execution of process, such excess becomes the very gist of the case, and may be disproved under the general issue by proof of resistance, or other matter showing that there was no excess. So also, as in the present

case, where the trespass proved is a judicial act, as no judicial act within the jurisdiction of the magistrate can be a trespass, the excess of jurisdiction is a fact essential to make out the plaintiff's case, and the question of jurisdiction is therefore open to proof under the general issue,—not as matter of justification, but in denial of the plaintiff's cause of action. Whether, where the supposed trespass is a judicial act, the excess of jurisdiction is essential to the plaintiff's case, may be easily tested. Suppose the narr. had set out such a case, without specially alledging a want of jurisdiction, would it not have been demurrable? It matters not that the justice has a special and not a general jurisdiction. This affects the *onus probandi* as to the excess of jurisdiction; but whether the jurisdiction be general or special, the fact of excess is equally essential to the plaintiff's case, and therefore is denied by the general issue.

Where the case relied on by the plaintiff is set forth in his narr., the general issue (if pleaded) applies itself to the case set forth; and what under it plaintiff must prove and defendant may disprove, will appear on the record. But where, as here, plaintiff declares generally for trespass and false imprisonment, not disclosing his case, and the general issue is pleaded, the plea (as well as the narr.) applies itself to the case presented by plaintiff at the trial, and the proof under the issue includes all that is essential to the case so presented. This principle, that where the narr. is general the plea of not guilty applies itself to the case presented at the trial, and admits the defendant to disprove all matters essential to the case presented, is one of necessity. Its application to a case like the present may not appear in the English authorities, because justices of the peace are within the statute 21, *Jac. I*; but complete analogies are presented in other actions. In trover, no particular mode of conversion is set forth in the narr., but plaintiff at the trial may prove any mode of conversion, and what defendant under the general issue may prove, or rather disprove, depends on the particular mode of conversion relied on. (2 *Saund. Pl. & Ev.*, 887.) In slander, mere proof of the publication of slanderous words, without reference to the occasion, the case is made out without proof of malice, and defendant under the general issue can only disprove the publication; but if by the plaintiff's case the words are proved to have been published on a *privileged occasion*, the matter of express malice becomes essential to the plaintiff's case, and any facts showing the absence

of it may be proved under the general issue. Not only so, but by a long course of decisions the defendant is even allowed himself to prove the privileged occasion under the general issue, when it has not been disclosed by the plaintiff's proof. (1 *Stark. on Slander*, 455, *ch.* 16.)

If plaintiff could have proved a trespass and imprisonment by defendant, without disclosing the fact that he acted in an official character, and defendant had sought in the first instance to introduce proof under the general issue that the supposed trespass was a judicial act, its admissibility might be denied without affecting the case. But such a case cannot arise. If in fact the trespass does consist in the illegal issuing of process by a judicial officer, the official character of the act is inseparable from it, and must appear in the plaintiff's proof, and draw after it the question of jurisdiction, as a question essential to the plaintiff's case, and therefore open to proof under the general issue.

The judicial character of the act complained of as a trespass in this case, was fully disclosed by the plaintiff's proof. Even the *record* of the proceedings before the justice, was put in evidence by him.

It is true that justices are named in the statute 21 *Jac. I.*, (2 *Stark. Ev.*, 584,) by which certain officers are enabled to prove all matters of defence under the general issue. These are *ministerial* officers, and the act has manifest reference to *ministerial* authority. Justices were included, because a large number of their powers are merely *ministerial;* such are their powers as conservators of the peace, and under various English statutes. If *judicial* power had been contemplated by the statute, all judges as well as justices of the peace would have been included.

*Mr. Rogers,* in opposition to the rule, argued that the questions argued by *Mr. Bates* were not raised on the trial; and did not properly come up on the argument for a new trial It was perfectly obvious that the justice had no jurisdiction. No felony was charged. He examined the other cases cited, and distinguished them from the present case. What is the object of a new trial? It promotes justice in the case, by correcting errors occurring in the former trial. How is it to be reached in this case? Where is the plain misdirection on any question of law? the manifest error of the jury on questions of fact? Are the damages excessive?

Weight of evidence; what was it? That a justice of the peace,

in flagrant abuse of his authority, committed a man to the cells for felony, who was not only not charged with any crime, but whom the justice himself declared to be innocent. If the evidence was rightly rejected in justification, should it have been admitted in mitigation of damages? Was it so offered? and did not the court make the suggestion itself, that possibly it might have been admitted for this purpose, and offer to adjourn to give counsel opportunity to examine the question, which was *rejected*.

Then on the broad question whether matters in justification can be given in evidence in the action of trespass, without a justification pleaded. Where is the case shown? If such a case had been presented, it would stand opposed to the established law for conturies. There is no case to be found in which matter of justification is admissible under the general issue, except in cases authorized by special statute, as that of 21 *Jac. I.* Not being admissible on the pleadings, was this matter admissible in reply? If a party give part of the record in evidence, the introduction of another part cannot be said to reply to, though it might explain the former. But how is it admissible, without a plea to let it in? The plea of not guilty does not deny every thing essential to the plaintiff's case. Take the action of trespass to real property. It is necessary for a plaintiff in such action, under certain circumstances, to prove title to the premises, but does the plea of not guilty put him on such proof, or allow the defendant to prove the contrary?

But it is assumed that the general issue has a kind of elasticity to apply itself to the particular case proved; how then did it ever become necessary to plead a justification? What is the use of such a plea, on the idea presented by the other side, of the plea of not guilty. That plea, instead of being a rule of pleading to regulate the mode of proof, is made by this reasoning to yield itself to the kind of proof, and become no rule at all.

2. The evidence offered and ruled out could not have varied the result of the case. The justice had no jurisdiction; all were trespassers, justice, constable and complainant; there was no crime charged or alledged; and the result could not have been varied by admitting the evidence. The rule is, therefore, even in case of an admitted error in ruling out evidence, it is not ground for a new trial, unless it would have varied the result.

3. As to the matter of excessive damages, he declined to argue a

question whether $176 75 was excessive recompense for imprisoning an innocent man two nights in a loathsome jail, with negro felons.

4. As to the shelter sought to be thrown over the magistrate, to make him legally irresponsible wherever there is complaint made, he denied it as law, and protested against it. There can be no principle consistent with individual security, but the principle that a felony must be shown to have been committed to protect those concerned in the arrest of a person, and probable cause to suspect the party. That was the principle laid down by the Court of Appeals, and announced by Chancellor Ridgely, in the case referred to in 2 *Harrington.*

*The Court* held it under advisement, and at the next term, ordered a new trial.

*By the Court.*

HARRINGTON, *Judge.*—1. The court erred in ruling out evidence for the defendant, that a complaint was made before him as a magistrate, and that his causing the plaintiff to be arrested was an official act, which was presented as his justification.

As a general principle a trespass cannot be *justified* under the plea of *not guilty.* The justification must be pleaded. The court was right, therefore, in announcing that principle; but the evidence offered was really not in justification, but in disproof of the trespass. A judge acting within his jurisdiction is not a trespasser, though his judgment be wrong on the facts. This is a fundamental principle. The denial of it would be fatal to the administration of justice; and produce greater evils than any which can result from holding the judge exempt from being sued as a trespasser. Any wrong done to the individual by an illegal arrest, may be speedily redressed by the writ of *habeas corpus;* and for malice or corruption, the judge may be punished; but how can justice be administered, if every opinion or judgment of the magistrate may subject him to a civil suit? There is no safety but in the rule that holds a judge, acting in good faith, irresponsible to the party for error in judgment.

The question was presented at the trial without much argument, and without reference to authorities. On this motion the matter has been more fully examined, and the authorities presented. They leave no doubt on my mind that the evidence was admissible.

In *Yates* vs. *Lansing,* (5 *Johns. Rep.,* 282,) Chief Justice *Kent* reviewed the decisions on this question, premising that such a review would "teach us to admire the wisdom of our forefathers, and to

revere a principle on which rests the independence of the administration of justice." He quotes Sergeant *Hawkins* for the principle "that the law has freed the judges of all courts of record from all prosecutions whatsoever, except in Parliament, for any thing done by them openly in such courts as judges." He cites the *Book of Assise*, 27 *Edward* 3, *pl.* 18, where A. was indicted for that being a judge of Oyer and Terminer, certain persons were indicted before him for *trespass*, and he had entered upon the record that they were indicted for *felony*, and judgment was demanded if he should answer for falsifying the record, since he was a judge by commission, and all the judges were of opinion that the presentment was void. In 9 *Edward*, 4, 3 *pl.*, 10, it was held by *Littleton*, Judge, and not denied, that an action of assault and battery would not lie against a justice of the peace for what he did as a judge of record. The same principle was afterwards more solemnly advanced by all the judges, in 21 *Edward*, 4, *pl.*, 49. They all concurred in opinion that for what a justice of the peace did in the sessions, he was not amenable.

Tracing the principle down through more modern cases, English and American, Judge Kent concludes with the case of *Phelps* vs. *Sill*, (1 *Day's Ca. in Error*,) where the Supreme Court of Connecticut said "it was a settled principle that a judge is not to be questioned in a civil suit for doing, or for neglecting or refusing to do, a particular official act, in the exercise of judicial power." No man would accept the office of judge, if his estate were to answer for every error in judgment; or if his time and property were to be wasted in litigations with every man whom his decisions might offend."

The case of *Hammond* vs *Howell*, (1 *Mod.*, 184; 2 *Ibid*, 218,) is remarkable for the attempt made by counsel to make it an exception to the admitted general rule, on the ground that the magistrate (the recorder of London) was guilty of so gross an abuse of power, that it was not warranted by his commission, and that therefore he did not act as judge. But the author says "the court did not yield to such miserable sophistry; for they held that the bringing of the action was a greater offence, than the imprisonment of the plaintiff, for it was a bold attempt both against the government and justice in general."

In *Groenvelt* vs. *Burnwell*, (12 *Mod.*, 386; 1 *Salk.*, 396; 1 *Lord Raym.*, 454,) Sir John *Holt*, after showing "that judges were not

liable to an action by the party for what they did as judges," adde d " that even if a justice of the peace should record that, upon his view, as a force, which was no force, he could not be drawn in question; for it is a judicial act; and that in like manner jurors were not responsible for their verdicts, because they were judges of fact."

I will not follow out the cases cited; for all of them, and many others which I have examined, maintain the same principle. I shall refer only to one other, which is in point, both on the principle, and on the question of admitting the evidence under the plea of not guilty. It is the case of *Mills* vs. *Collett*, (12 *Eng. Com. Law Rep.*, 11,) which was an action of *trespass for assault and imprisonment* against a *justice of the peace*, for committing the plaintiff to the county jail, "where he lay among felons for three months," on a charge of felony, when his offence amounted at the most to trespass only. The plea was *not guilty*. The prosecution was under an act of parliament, for felling timber trees; and as it appeared in evidence that the trees were in the plaintiff's own occupation, it was argued against the magistrate that he had no jurisdiction, and he must have known that he had none; and that the plaintiff had not been guilty even of trespass. But the court held, that the offence charged being within his jurisdiction, the magistrate could not be sued as a trespasser. *Tindale*, Chief Justice : " If a party charged with an offence be brought before a magistrate, he must exercise a judgment in the case, and he is not liable for a mere error in judgment." *Park*, Judge ; " If when a charge is before him, a magistrate does not exceed his jurisdiction, he is not liable to an action." *Burrough*, Judge : " If a magistrate has jurisdiction, as he had here, he never can be liable in an action of trespass, nor in any form of action for a mere mistake in matter of law, and whether an occupier could commit a felony under the statute, on his own premises, was clearly a matter of law." *Gasalee*, Judge : " The defendant acted on his general authority; and if there was a probability of a felony having been committed, he was bound to proceed as in other cases. Suppose a committal on suspicion of murder, and it turns out not to be murder ; shall the magistrate be liable ?"

The only question then in the present case is, whether Justice Wiggins had jurisdiction to commit for felony, and whether there was a charge before him upon which he acted judicially. The affidavit ruled out at the trial presented such a charge, namely, " that a certain Yarnall Bailey, did, at the hundred of Christiana, in the

county aforesaid, on the eleventh day of November instant, by threats and putting in fear one Thomas Braceland, did forcibly take or cause to be forcibly taken away from the said Thomas Braceland, one large bay gelding of the value of sixty dollars; one saddle and bridle of the value of six dollars; said horse, saddle and bridle, being the property of him, the said Charles Murphy." This was not necessarily a charge of felony, but it might prove to be such, and the magistrate had jurisdiction of the matter, and was bound to exercise his judgment upon it. That judgment, though erroneous, protected him from this suit; and he should have been allowed to prove this defence under the general issue.

2. The jury erred in finding a verdict for the plaintiff on the proof before them. The transcript of the record which was put in evidence by the plaintiff, presented this matter of justification, namely, that the defendant was acting as a justice of the peace, on a charge preferred under oath, and that as such magistrate he issued the warrant upon which the plaintiff was arrested. For such an act he cannot be held liable as a trespasser. His judgment on the complaint before him may or may not have been wrong; that remains to be tried in Crossan's case, for he has been indicted for a felony in the same transaction. It would be monstrous to hold a justice of the peace liable as a trespasser, for erroneously judging that to be a felony which the prosecuting officer of the State, and a grand jury of the county, have treated as a felony. In Bailey's case, who was with Crossan, it may be assumed that the judgment of the justice was wrong, and that he had no felonious intent. The grand jury have ignored the bill against him, and I think properly; but he was engaged in an unlawful, if not in a criminal act, in aiding Crossman to take away forcibly the property of Murphy. He has, therefore, no cause of complaint, if the character of his offence was mistaken by the magistrate; and however much mistaken or erroneous the judgment of the magistrate may have been in the case, it does not make him a trespasser, and Bailey can have no action against him for the arrest and imprisonment. On the evidence, therefore, the jury ought to have rendered a verdict for the defendant.

Judge WOOTTEN concurred in making the rule absolute, and granting a new trial, on the ground that the evidence offered by the defendant was admissible, not under the general issue, but in reply

to the transcript offered by the plaintiff, showing the character in which he acted. On the other points, he expressed no opinion.

Chief Justice BOOTH was opposed to laying the rule; and dissented from the decision made by the majority granting a new trial. He expressed his reasons, briefly, for dissenting, which he designed to draw out in writing, but his subsequent sickness and death prevented this. He thought a plea of justification was necessary to let in the evidence offered, and that a blank process was so irregular, and the complaint on which it was issued so defective, that it was no protection to the magistrate who issued or the officer who executed it.

_Rogers,_ for plaintiff.
_Bates,_ for defendant.